UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| KELSEY MILES, *et al.*, | ) | |
|---|---|---|
| | ) | Case No. 1:23-cv-126 |
| *Plaintiffs*, | ) | |
| | ) | Judge Atchley |
| v. | ) | |
| | ) | Magistrate Judge Dumitru |
| BRADLEY COUNTY, TENNESSEE, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Bradley County, Tennessee's Motion for Summary Judgment [Doc. 30]. For the following reasons, the Motion [Doc. 30] is **GRANTED**.

### I. BACKGROUND

This is a civil rights case. On the night of June 16, 2022, Bradley County Sheriff's Office Sergeant Heath Arthur, Deputy Taylor Thompson, and Deputy Jeffrey Gouin responded to the house of Christian Robert Jensen to perform a welfare check after Jensen referenced self-harm in a Facebook post. [*See* Doc. 32-3 at 5–6; Doc. 40-2 at 2, 16–18]. Jensen refused to speak with the deputies either in person or over the phone despite multiple attempts at contact. [Doc. 32-3 at 10; Doc. 40-2 at 3, 21]. As the deputies evaluated the situation, Jensen's granddaughter exited the home. [Doc. 40-2 at 4; Doc. 41 at 12:40–12:55].[1] She informed Deputy Thompson that Jensen had just "pulled out a bottle" and stated that someone was going to kill him. [Doc. 40-2 at 4; Doc. 41 at 13:19–13:30]. She then stated that both her brother and mother (Jensen's daughter Plaintiff Olivia Jensen) were still in the house and that her brother was upstairs. [*See* Doc. 40-2 at 5; Doc.

---

[1] Citations to Doc. 41 refer to the body-worn camera video manually filed by Plaintiffs.

41 at 13:41–13:52]. Olivia Jensen exited the house shortly thereafter. [*See* Doc. 40-2 at 5; Doc. 41 at 15:17–15:25].

She informed the deputies Jensen had been drinking and that he may have a Glock pistol. [Doc. 32-1 at 12; Doc. 41 at 16:04–16:21]. She also confirmed that her son was sleeping upstairs and that to get where he was, one would have to go through the room where Jensen was located. [*See* Doc. 32-1 at 7–9; Doc. 32-3 at 12–13; Doc. 40-2 at 5–7]. Equipped with this new information— *i.e.*, that Jensen was distraught, drinking, and potentially armed while a child was in the house—Sergeant Arthur decided to enter the house. [Doc. 32-3 at 13–14].

Sergeant Arthur, Deputy Thompson, and Deputy Gouin entered Jensen's house through the kitchen. [*Id.* at 14; Doc. 41 at 20:18–20:35]. As they approached the room where Jensen was located, Sergeant Arthur attempted to communicate with Jensen but was met with obscenities. [Doc. 41 at 20:36–20:53]. Jensen then reached into a drawer, asked the officers to shoot him, and stated he had a firearm. [*Id.* at 20:53–21:02]. As this was occurring, the officers drew their weapons and began issuing Jensen commands, directing him to not reach for anything and to keep his hand out of the drawer. [*Id.* at 20:53–21:40]. Jensen continued to swear, state he had a firearm, and ask the officers to shoot him, twice pulling his hand out of the drawer and lifting it to the sky before returning it to the drawer. [*Id.* at 21:12–21:40]. Jensen then pulled his hand out of the drawer a third time. [*Id.* at 21:40–21:43]. But unlike before, he directed his hand towards the officers. [*Id.*]. In response, Sergeant Arthur fired a single shot which struck Jensen in the chest. [*Id.*; Doc. 32-3 at 24–25]. Jensen died shortly thereafter. [Doc. 41 at 43:05–43:15].

This lawsuit followed. [Doc. 1]. Plaintiffs allege Bradley County and "John Does, Unknown Officers of the Bradley County Sheriff's Department," violated Jensen's Fourth Amendment rights. [*See id.* at ¶¶ 29–45]. They bring several claims pursuant to 42 U.S.C. § 1983

(Counts I through IV) along with a litany of state law claims (Counts V through XII). [*Id.* at ¶¶ 29–89]. Plaintiffs never amended their Complaint to identify the John Does. Now, Bradley County has filed a Motion for Summary Judgment which is ripe for review.

## II. STANDARD OF REVIEW

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Sommer v. Davis*, 317 F. 3d 686, 690 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)). The moving party may satisfy its burden by producing evidence that demonstrates the absence of a genuine issue of material fact or "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. ANALYSIS

Before discussing the merits of Bradley County's Motion, the Court finds it prudent to first clarify who the defendants are in this case. Throughout their response to Bradley County's Motion, Plaintiffs repeatedly refer to Sergeant Arthur, Deputy Thompson, and Deputy Gouin as defendants. [*See generally* Doc. 40]. None of these individuals, however, are actually defendants. "Where a plaintiff is temporarily unable to ascertain a defendant's actual name, the plaintiff may initially file a complaint that names an unknown defendant by using a 'John Doe' appellation or similar pseudonym." *Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 918 (E.D. Tenn. 2020). That said,

"simply identifying an unknown defendant in a complaint by the pseudonym of John Doe is not enough to commence a civil action against that unknown defendant." *Id.* A plaintiff must amend the complaint to name a previously unknown defendant and properly serve him to be able to pursue claims against him. *Id.* In this case, Plaintiffs never amended their Complaint to identify Sergeant Arthur, Deputy Thompson, or Deputy Gouin as defendants. Consequently, they are not parties to this action, and there are no claims against them for the Court to consider. *See id.* Bradley County is the only defendant in this case.

To prevail on a Section 1983 claim against a municipality like Bradley County, "a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Absent such a policy or custom, a plaintiff cannot sue a municipality under Section 1983 notwithstanding the fact he was injured by the municipality's agent or employee. *Id.* To prove the existence of an illegal policy or custom, "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.* Here, Plaintiffs are pursuing only the first and third theories of liability. But because the evidence fails to support either, their Section 1983 claims must be dismissed. *See id.*

Starting with Bradley County's legislative enactments and official agency policies, Plaintiffs argue that General Order 41.2.7 of the Bradley County Sheriff's Office was deficient because it "did not specifically address effective de-escalation tools, such as using a taser or withdrawing, as the best course of action in certain types of situations." [Doc. 40 at 15 (citing Doc. 40-2 at 52, 56)]. This argument is insufficient to establish Bradley County's liability. "To establish

municipal liability based on a municipal policy, plaintiff must show that the policy was the 'moving force' behind the constitutional violation by establishing 'a direct causal link between a municipal policy or custom and the alleged constitutional violation.'" *Austin v. Redford Twp. Police Dep't*, 859 F. Supp. 2d 883, 906 (E.D. Mich. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)), *report and recommendation adopted*, 859 F. Supp. 2d 883 (E.D. Mich. 2011). For a direct causal link to exist, "the policy must have been the factual and proximate cause of [the plaintiff's] injury." *Crabbs v. Scott*, 800 F. App'x 332, 338 (6th Cir. 2020).

"Factual causation 'is typically assessed using the "but for" test, which requires [the Court] to imagine whether the harm would have occurred if the defendant had behaved other than it did.'" *Id.* (quoting *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007)). In this case, it is not clear whether the alleged deficiencies in General Order 41.2.7 are a "but for" cause of Jensen being shot. Whether "but for" causation exists, however, is immaterial given that General Order 41.2.7 was clearly not the proximate cause of the shooting. "The cornerstone of the proximate-cause analysis is foreseeability[,]…'whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct.'" *Id.* (quoting *Powers*, 501 F.3d at 609). "Proximate cause can be resolved by the court if the plaintiff has not provided enough evidence for a reasonable juror to conclude that the relevant injury was reasonably foreseeable." *Id.*

Here, it was not reasonably foreseeable that General Order 41.2.7's failure to "address effective de-escalation tools, such as using a taser or withdrawing, as the best course of action in certain types of situations" would result in the death of someone suffering from mental illness like Jensen. *See id.* Plaintiffs have not directed the Court to any other instance where a person suffering from mental illness was injured or killed by Bradley County Sheriff's deputies. Furthermore,

although General Order 41.2.7 does not directly address de-escalation tools, it does (i) identify indicators deputies should look for when evaluating whether someone may be suffering from mental illness and (ii) provide guidelines for interacting with said persons. [Doc. 32-7 at 67–73]. Additionally, General Order 41.2.7 does not exist in a vacuum. On the date Mr. Jensen died, Bradley County Sheriff's Office General Order 1.3, which addresses use of force, was also in effect. [*See id.* at 1, 6–22]. General Order 1.3 dictated, among other things, that "[o]fficers will use only the minimum and reasonable amount of force necessary to bring an incident under control." [*Id.* at 9]. It also explained when deputies could use varying levels of force. [*Id.* at 8–15]. Considering this, the lack of prior instances where deputies injured or killed persons suffering from mental illness, and the fact that General Order 41.2.7 instructed officers on how to interact with persons suffering from mental illness, it was not reasonably foreseeable that General Order 41.2.7's failure to "address effective de-escalation tools, such as using a taser or withdrawing, as the best course of action in certain types of situations" would result in the death of someone like Jensen. *See Crabbs*, 800 F. App'x at 338. Accordingly, Plaintiffs cannot hold Bradley County liable under this theory of municipal liability.

The lack of prior instances where Bradley County Sheriff's deputies injured or killed persons suffering from mental illness also limits how Plaintiffs may pursue the failure-to-train theory of municipal liability. To establish municipal liability under the failure-to-train theory, a plaintiff must prove: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the municipality's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused his injury." *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 511 (6th Cir. 2019) (cleaned up). Proving deliberate indifference ordinarily requires a plaintiff to show "[a] pattern of similar constitutional violations[.]" *Connick*

*v. Thompson*, 563 U.S. 51, 62, (2011). After all, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* There is, however, an exception to this general rule. A plaintiff may establish the failure-to-train theory based on a single incident where the record shows the municipality is on notice that, absent additional training, it is so highly predictable that its officers will violate constitutional rights as to amount to a conscious disregard of those rights. *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 567 (6th Cir. 2011). This is a difficult showing to make, requiring a plaintiff to demonstrate that future misconduct "is almost inevitable or would be properly characterized as substantially certain to result." *Id.* (internal quotation marks omitted). The classic example of such a scenario is a municipality that fails to train its officers on the use of deadly force. *Canton*, 489 U.S. at 390.

The Court has already noted that Plaintiffs have not identified any other instances of persons suffering from mental illness being injured or killed by Bradley County Sheriff's deputies. As a result, Plaintiffs can only succeed on the failure-to-train theory by establishing that Bradley County "was on notice that, absent additional training, it was so highly predictable that sheriff's deputies would misuse deadly force" against persons suffering from mental illness "as to amount to conscious disregard for [those] citizens' rights." *Harvey*, 453 F. App'x at 567. Plaintiffs have failed to make this showing.

The undisputed evidence shows that at the time of Jensen's death, Bradley County required sheriff's deputies to be certified by the Peace Officers Standards and Training Commission ("POST") and annually complete forty hours of in-service training to maintain employment. [Doc. 32-9 at 1; Doc. 32-7 at 2]. The undisputed evidence further shows Bradley County required deputies to be trained on General Order 1.3 which, among other things, explains when deputies

may use deadly force. [Doc. 32-7 at 8–9, 21]. Bradley County Sheriff's policy also required that deputies receive annual training concerning how to interact with persons suffering from mental illness. [*Id.* at 72]. Finally, the Bradley County Sheriff's Office offered its deputies a host of specialized trainings on a variety of topics each year. [Doc. 32-9 at 2]. Sergeant Arthur, Deputy Thompson, and Deputy Gouin were each POST certified and current with their required trainings at the time of Jensen's death.[2] [*Id.*; Doc. 32-7 at 2–3].

Plaintiffs have offered no evidence suggesting the training requirements described above were so deficient that constitutional violations were "almost inevitable" or "substantially certain to result." *Harvey*, 453 F. App'x at 567. Plaintiffs fault Bradley County for not scheduling Sergeant Arthur for crisis training, [Doc. 40 at 15], but "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability[,]" *Connick*, 563 U.S. at 68; *see also Canton*, 489 U.S. at 391. Plaintiffs were required to show that Bradley County "was on notice that, absent additional training, it was so highly predictable that sheriff's deputies would misuse deadly force" against persons suffering from mental illness "as to amount to conscious disregard for [those] citizens' rights." *Harvey*, 453 F. App'x at 567. Plaintiffs have failed to make this showing or really introduce any meaningful evidence in support of it. Accordingly, they cannot prevail on a failure-to-train theory of municipal liability.

Considering the foregoing, Plaintiffs have failed to establish any grounds for holding Bradley County liable for the alleged Fourth Amendment violations resulting in Jensen's death. Consequently, Plaintiffs' Section 1983 claims (Counts I through IV) must be dismissed with prejudice. And with no federal claims remaining, the Court will decline to exercise supplemental

---

[2] Although Plaintiffs' expert, Gregory Gilbertson, opined that some of the deputies' actions during their encounter with Jensen were "tactically deficient," [Doc. 40-2 at 48], it is undisputed that Sergeant Arthur, Deputy Thompson, and Deputy Gouin had received sufficient training to work as police officers in Tennessee at the time of Jensen's death. [Doc. 32-4 at 6; Doc. 32-8 at 11].

jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiffs' state law claims (Counts V through XII) will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Bradley County's Motion [Doc. 30] is **GRANTED**. Plaintiffs' Section 1983 claims (Counts I through IV) are hereby **DISMISSED WITH PREJUDICE** and their state law claims (Counts V through XII) are hereby **DISMISSED WITHOUT PREJUDICE**. A separate judgment will enter. There being no more matters to resolve, the Clerk is **DIRECTED** to close the file.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**